**STATE of Iowa, Appellee,**

v.

**David Max SMOTHERS, Appellant.**

**No. 64308.**

Supreme Court of Iowa.

Aug. 26, 1981.

Gordon Liles, Fort Madison, for appellant.

Thomas J. Miller, Atty. Gen., and Julie F. Pottorff, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C. J., and UHLENHOPP, McGIVERIN, LARSON, and SCHULTZ, JJ.

LARSON, Justice.

The defendant, David Max Smothers, was charged in a trial information with burglary in the second degree, §§ 713.1, 713.3, Code Supp.1977, and as a result of plea negotiations with the State, he entered a plea of guilty. He now appeals from the judgment entered on his plea, contending the trial court erred in failing to advise him he would thereby waive a jury trial and in failing to determine there was a factual basis for the plea, all as required by Iowa Rule of Criminal Procedure 8(2)(b). The issues presented are (1) whether the appeal may be prosecuted in view of Smother's failure to file a motion in arrest of judgment, Iowa R.Crim.P. 23(3)(a), and (2) whether the record shows compliance with the guilty-plea requirements of rule 8(2)(b).

*I. The requirement of a motion in arrest of judgment.* Rule 23(3)(a) provides, in part: "A defendant's failure to challenge the adequacy of a guilty plea proceeding by motion in arrest of judgment shall preclude his or her right to assert such challenge on appeal." There is a concomitant duty on the trial court, however, to alert the defendant to the requirement:

> The court shall inform the defendant that any challenges to a plea of guilty based on alleged defects in the plea proceedings must be raised in a motion in arrest of judgment and that failure to so raise such challenges shall preclude the right to assert them on appeal.

Iowa R.Crim.P. 8(2)(d).

We have held that when a defendant is not advised, pursuant to rule 8(2)(d), of the necessity for filing the motion, it is not a prerequisite to appeal. *E. g., State v. Smith*, 300 N.W.2d 90, 91 (Iowa 1981); *State v. Worley*, 297 N.W.2d 368, 370 (Iowa 1980). In this case, the trial court advised Smothers of the necessity of filing a motion in arrest of judgment, but appeared to limit it to a challenge based upon voluntariness, whereas his appeal is on other grounds. He argues this limited warning to him was, in effect, no warning at all, and that this case falls under the rule of *Smith* and *Worley*.

In addressing Smothers at the guilty-plea proceeding, the trial court stated:

> I have the duty of informing you that if on appeal you should wish to raise some

question concerning the voluntariness of your plea, that is, the questions that you have been asked by the court here today in compliance with the requirements of the *Brainard* [*v. State*, 222 N.W.2d 711 Iowa] and *Sisco* standards, if you intend to raise that on appeal, you must within forty-five days from this date or within five days before judgment is pronounced file a motion in arrest of judgment and tell this court what they are, give the court an opportunity to direct further questions to you. If you do not file this motion in arrest of judgment as required by the rules, it's this court's understanding that you can no longer raise on appeal any question concerning the voluntariness of your plea . . . .

It is true, as Smothers claims, that he was not informed of the necessity of filing an arrest-of-judgment motion as a prerequisite to appealing on grounds other than voluntariness. While it would have been preferable to couch the admonition in the broader language of rule 8(2)(d), we need not decide whether the trial court's failure to do so precludes this appeal, because it is without merit in any event.

*II. Compliance with rule 8(2)(b).* Procedures for accepting guilty pleas are set forth in rule 8(2)(b):

The court may refuse to accept a plea of guilty, and shall not accept such plea without first addressing the defendant personally and determining that the plea is made voluntarily and intelligently and has a factual basis.

Before accepting a plea of guilty, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

\*     \*     \*     \*     \*     \*

(4) That if the defendant pleads guilty there will not be a further trial of any kind, so that by pleading guilty the defendant waives the right to a trial.

*A. Waiver of right to trial.* At the arraignment the trial court asked Smothers:

Do you understand that if you plead not guilty, you would be entitled to a speedy and public trial by jury?

The defendant: Yes sir. Yes sir.

Smothers contends that this question did not specifically advise him that "there will not be a further trial of any kind," Iowa R.Crim.P. 8(2)(b)(4), if he entered a plea of guilty. He acknowledges, however, that the negative implication of the question "perhaps would constitute substantial compliance" with the rule, and concedes he was not misled by the court's statement.

■ We have held that a trial court is not required to advise a defendant of his right to a jury trial in the exact language of rule 8(2)(b)(4) if the record shows he was advised of that right and was actually aware of it. *State v. Killpack*, 276 N.W.2d 368, 371 (Iowa 1979) Under analogous circumstances we have held that a trial court need not literally comply with statutory requirements relating to criminal procedure, only that it "substantially" or "materially" comply with them. *See, e. g., State v. Paschal*, 300 N.W.2d 115, 117–19 (Iowa 1981) (search warrant procedure, § 808.3, The Code 1977); *State v. Worley*, 297 N.W.2d 368, 371–72 (Iowa 1980) (guilty plea procedure, Iowa R.Crim.P. 8(2)(b)(1); *State v. Fluhr*, 287 N.W.2d 857, 862 (Iowa 1980) (guilty plea procedure, Iowa R.Crim.P. 8(2)(b)). Advising Smothers he would be entitled to a jury trial if he pled not guilty clearly implied the converse: that if he pled guilty he would not have a trial. We believe the trial court substantially complied with rule 8(2)(b)(4).

*B. Factual basis.* Smothers also complains that there was not a factual basis for the plea, Iowa R.Crim.P. 8(2)(b), since there was insufficient evidence of his intent to commit theft. He was charged with violating section 713.1, which provides: "Any person having the intent to commit a felony, assault or theft therein, who, having no right, license or privilege to do so, enters an occupied structure . . . commits burglary." It is an essential element of burglary that the defendant have the intent to commit a crime at the time he enters the structure. *See State v. Clay*, 213 N.W.2d 473, 480

(Iowa 1973), *State v. Morelock*, 164 N.W.2d 819, 822 (Iowa 1969) ("breaking and entering" cases under predecessor to section 713.-1)

In the colloquy with the trial court, Smothers at first said he did not have the requisite intent to commit a crime at the time he entered the victim's apartment. The record shows these questions and answers:

THE COURT: All right. Now, Mr. Smothers, do you admit or deny that on or about December 11, 1979, in Des Moines County, Iowa, you did enter the property of [the victim] . . .?

THE DEFENDANT: Yes, sir.

THE COURT: Do you admit that or deny it?

THE DEFENDANT: Yes, sir, admit.

THE COURT: And do you—Was your purpose in entering the premises—Was or was not your purpose in entering the premises to commit theft?

THE DEFENDANT: At first, no. I went in the premises, and I had no intentions of taking anything at the time. After I was in there is when I did it.

THE COURT: And your purpose in entering the premises . . . at some point in time, at least after you entered the premises, was to take property; would that be true or false?

THE DEFENDANT: At the time that I went in, I really had no intentions of taking the property.

THE COURT: Because you didn't know what was in there probably?

THE DEFENDANT: Yes.

Smothers responded substantially the same several times during the exchange, but when the questions became more specific the existence of his intent to commit theft became more apparent:

THE COURT: Let me ask you this. Whoever was with you did you have some discussion before you decided to go into this property?

THE DEFENDANT: Yes, sir.

THE COURT: And what was that discussion about?

THE DEFENDANT: He said that he would like to have a nice hunting gun for duck hunting.

THE COURT: All right. And this was before you ever entered the premises?

THE DEFENDANT: Yes, sir.

THE COURT: And what was your state of mind at that point in time?

THE DEFENDANT: At that time I can't recollect what I was thinking to the best of my knowledge. Your Honor, to clear your mind, the night before I had been inside this place and I had seen the guns—that they was there. I had spoken with the person who was with me. At that time he said he would like for me to show him where this residence was at. At that time we went out there and went in, took the guns, and then we left.

THE COURT: All right. But you had seen them the night before you went in; is that true?

THE DEFENDANT: Yes.

Following an inquiry to counsel about whether it was necessary for Smothers to have formed his intent prior to the breaking-and-entering, Smothers intervened and said:

Your Honor, as I seen the guns the night before, I had the intent that after I talked to this person that we would go there and take the guns.

THE COURT: I see. That was the day before you entered the property and took them?

THE DEFENDANT: Yes, sir.

Smothers argues from this record that he advised the trial court "on four separate occasions" during the proceeding that he did not have the intent to commit at the time of entry. Under such circumstances, he concludes, the trial court should have rejected the plea. Alternatively, he contends the trial court should have "made much more detailed inquiry" into the matter since his responses suggested a "misconception about the intent factor." *See State v. Fluhr*, 287 N.W.2d 857, 867 (Iowa 1980) (in determining whether there is a factual basis for a plea of guilty a trial court may be required to make "additional explanation and exploration").

Two facets of the record support the trial court's determination of a factual basis for the plea. First, Smothers knew before he entered the apartment that there were guns in it, and that his friend had told him "he would like to have a nice hunting gun . . . ." These circumstances indicate there was an intent to commit theft which was formed prior to the breaking and entering of the apartment. *See State v. Clay*, 213 N.W.2d at 480 (an intent to steal "may be inferred from the actual breaking and entering of a building which contains things of value"); *State v. Morelock*, 164 N.W.2d at 822. Second, although Smothers initially denied having entered the apartment for the purpose of taking any property, he eventually wavered from that position by stating that "as I seen the guns [in the apartment] the night before, I had the intent that after I talked to [my friend] that we would go there and take the guns." *Cf. State v. Fluhr*, 287 N.W.2d at 867 ("a defendant's equivocal remarks concerning his intent will not negate the determination of a factual basis . . . if th[at] determination [is] otherwise supported by the record").

The procedure for determining the existence of a factual basis for the plea, as well as the sufficiency of the showing, is largely left to the discretion of the trial court. *See* ABA Standards for Criminal Justice, *Pleas of Guilty* § 1.6, Commentary at 33 (1968). We believe the record here adequately supports the trial court's finding of a factual basis for the plea.

AFFIRMED.