George Alden EGGMAN, Petitioner,

v.

David SCURR, Warden, Iowa State Penitentiary, Respondent.

No. 66051.

Supreme Court of Iowa.

Oct. 21, 1981.

John P. Roehrick, Des Moines, for petitioner.

Thomas J. Miller, Atty. Gen., and Thomas McGrane, Asst. Atty. Gen., for respondent.

Considered by REYNOLDSON, C. J., and UHLENHOPP, McCORMICK, ALLBEE and McGIVERIN, JJ.

McGIVERIN, Justice.

The United States District Court, Southern District of Iowa, has certified to us two questions concerning the necessary criminal intent element under section 714.1(2), The Code 1979. The questions are, first, whether general criminal intent is an element of the offense of theft by misappropriation under section 714.1(2) and second, whether specific intent to defraud is an element of the same offense. We answer the first question in the affirmative and the second in the negative.

These questions were certified to us pursuant to chapter 684A, The Code 1981, and Iowa R.App.P. 451–61.

The certified facts indicate that petitioner, George Alden Eggman, entered into a written contract for the leasing of a 1978 Dodge Aspen automobile from Hartwig Leasing Company of Iowa City on January 11, 1979. Eggman was to return the vehicle on January 15. As of February 1 the vehicle had not been returned and all efforts to contact the defendant were fruitless. The address he gave on the contract was fictitious. The vehicle was subsequently recovered in Galesburg, Illinois, and Eggman was arrested.

On February 14 Eggman was charged by trial information with the crime of theft in the second degree in violation of sections 714.1(2) and 714.2(2). He appeared with counsel and pled guilty to the offense as charged. Thereafter, judgment of conviction and sentence were entered.

After his direct appeal and a post conviction relief application were dismissed in state court, Eggman brought a habeas corpus petition under 28 U.S.C. § 2254 (1976) in United States District Court challenging

the federal constitutionality of his state court conviction. The gravamen of Eggman's theory was that when he pled guilty he was not advised of and did not understand the nature of the charge to which he pled guilty and that he did not admit to the intent element of section 714.-1(2). Because the United States District Court could not adequately address Eggman's federal constitutional claims without resolution of the question concerning the intent element of section 714.1(2), it certified the two questions of law to this court.

Section 714.1(2) provides:

A person commits theft when the person does any of the following:

. . . .

2. Misappropriates property which the person has in trust, or property of another which the person has in his or her possession or control, whether such possession or control is lawful or unlawful, by using or disposing of it in a manner which is inconsistent with or a denial of the trust or of the owner's rights in such property, or conceals found property, or appropriates such property to his or her own use, when the owner of such property is known to him or her. Failure by a bailee or lessee of personal property to return the property within seventy-two hours after a time specified in a written agreement of lease or bailment shall be evidence of misappropriation.

■ I. *Is general criminal intent an element of section 714.1(2)?* On its face section 714.1(2) has no express requirement of a general criminal intent. However, a basic premise of criminal liability, expressed in the maxim *actus not facit reum nisi mens sit rea,* is that an act alone does not make one guilty. unless his mind is also guilty. W. La Fave & A. Scott, Jr., *Handbook on Criminal Law* § 27 at 192 (1972). Thus, we are faced with an ambiguity between the language of the statute and a generally accepted element of theft offenses.

This court first articulated in *State v. Dunn,* 202 Iowa 1188, 1189, 211 N.W. 850, 851 (1927) the principle, "Whether a criminal intent or guilty knowledge is an essential element of a statutory offense is to be determined as a matter of construction from the language of the act, in connection with its manifest purpose and design." *State v. Conner,* 292 N.W.2d 682, 685 (Iowa 1980). We have applied this rule on several occasions to construe a statute to include a criminal intent element absent from its face. *Id., See e. g., State v. Miller,* 308 N.W.2d 4, 6–7 (Iowa 1981) (defendant's knowledge of the accident an implied element in statute requiring driver involved in accident resulting in injury or death to stop and remain at scene); *State v. Christopher,* 176 N.W.2d 777, 778 (Iowa 1970) (damage apparent to defendant an implied element in statute requiring driver who collides with unattended vehicle to leave his name and address); *State v. Ramos,* 260 Iowa 590, 594–95, 149 N.W.2d 862, 864–65 (1967) (scienter implied in obscenity statute); *State v. Drummer,* 254 Iowa 324, 330, 117 N.W.2d 505, 508–09 (1962) (guilty knowledge implied in statutory crime of operating motor vehicle without owner's consent); *State v. Schultz,* 242 Iowa 1328, 1334, 50 N.W.2d 9, 12 (1951) (guilty knowledge implied in statute prohibiting sale of beer to minors).

The polestar of statutory interpretation or construction is legislative intent. *Connor,* 292 N.W.2d at 684; *Loras College v. Iowa Civil Rights Commission,* 285 N.W.2d 143, 147 (Iowa 1979). "While this rule should be used to the exclusion of all other rules of statutory construction, the other rules must be applied together in light of the particular facts of each case when used to help us find the true legislative intent." *Loras College,* 285 N.W.2d at 147.

■ Although there is no constitutional requirement that *mens rea* be an element of a criminal offense, *Powell v. Texas,* 392 U.S. 514, 535, 88 S.Ct. 2145, 2156, 20 L.Ed.2d 1254, 1269 (1968), we conclude that a general criminal intent is a requisite element of section 714.1(2). This conclusion is supported by the following reasons. First, pursuant to the rule of statutory construction, "[a]ll parts of the enactment should be con-

sidered together and undue importance should not be given to any single or isolated portion", *Loras College*, 285 N.W.2d at 148, when section 714.1(2) is compared with other sections of chapter 714, it is apparent that at least general criminal intent is an element of all theft offenses. For example, section 714.7, which does not expressly list criminal intent as an element of operating a vehicle without the owner's consent, has been interpreted to require a general criminal intent. *State v. McCormack*, 293 N.W.2d 209, 212 (Iowa 1980). Other subsections of section 714.1 on theft committed by other means also require varying degrees of intent: 714.1(1) requires intent to deprive; 714.1(3) requires deception; 714.1(4) requires knowledge; 714.1(5) requires intent to defraud; and 714.1(6) requires knowledge.

Second, the intent of the legislature appears to be to require something more than a mere failure to perform according to the terms of a motor vehicle rental contract to impose criminal liability. The necessity to assume the legislature intended that some level of intent be found was noted in *State v. Billings*, 242 N.W.2d 736, 738 (Iowa 1976).

▮ Third, offenses which have no express intent elements may be characterized as general intent crimes. K. Dunahoo, *The New Iowa Criminal Code*, 29 Drake L.Rev. 237, 296 (1979). Section 714.1(2) has no express intent element and thus may be said to be a general intent crime. *Accord, Connor*, 292 N.W.2d at 686 (§ 707.5(1), involuntary manslaughter, which has no express mental element, construed, in part on basis of prior common law, to require recklessness.)

Fourth, for the reasons stated in division II we find section 714.1(2) is not a specific intent crime and thus is a general intent crime.

In sum, we hold that a general criminal intent is an element of the offense of theft by misappropriation in violation of section 714.1(2).

II. *Is a specific intent to defraud an element of section 714.1(2)?* The degree of intent required for culpability under a criminal statute is a matter of statutory construction. *Connor*, 292 N.W.2d at 685. The distinction between general intent and specific intent has not always been made with the utmost clarity. Some scholars are critical of attempts to distinguish between the two intents. "Much of the existing uncertainty as to the precise meaning of the word 'intent' is attributable to the fact that courts have often used such phrases as 'criminal intent', 'general intent', 'specific intent', 'constructive intent', and 'presumed intent.' " W. La Fave & A. Scott, Jr., *supra* § 28 at 201. Others have traced the source of confusion over specific and general intent to jury instructions that focus on intent instead of specific or general intent. K. Dunahoo, 29 Drake L.Rev. at 298.

"[T]he most common usage of 'specific intent' is to designate a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the crime." W. La Fave & A. Scott, Jr., *supra* § 28 at 202.

When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a further consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence; the crime is deemed to be one of specific intent. P. Johnson, *Criminal Law*, 329 (1975).

This court has differentiated between specific and general intent in the past. In *State v. Hobbs*, 252 Iowa 432, 435–37, 107 N.W.2d 238, 240–41 (1961), we held that only a "general burglarious intent" and not a specific intention to use burglary tools at a particular time or place was an element of section 708.7, The Code 1958 (possession of burglary tools with intent to commit burglary). In *State v. Wallace*, 259 Iowa 765, 774, 145 N.W.2d 615, 621 (1966), we held that a specific intent to "cause such person to be secretly confined or imprisoned" was not an element of kidnapping under section

706.1, The Code 1962, and that the offense is "committed when an offender willfully, without lawful authority, forcibly or secretly confines or imprisons another person within the state against his or her will." In *State v. Barney*, 244 N.W.2d 316, 318 (Iowa 1976), we held that a specific intent to kill was an element of assault with intent to commit murder in violation of section 690.6, The Code 1975. In *State v. Redmon*, 244 N.W.2d 792, 797 (Iowa 1976), we held that assault and battery is a general intent crime while assault with intent to inflict great bodily injury and breaking and entering with intent to commit a public offense are specific intent crimes.

"Intent is of two kinds, specific and general. Specific intent is present when from the circumstances the offender must have subjectively desired the prohibited result. General intent exists when from the circumstances the prohibited result may reasonably be expected to follow from the offender's voluntary act, irrespective of any subjective desire to have accomplished such result."

*Id.* None of these prior cases dealing with intent has dealt with theft by misappropriation, however.

Section 714.1(2) was added to the code in the extensive revision of the criminal code that took effect in 1978. A portion of this statute was construed in *State v. Gates*, 306 N.W.2d 720, 722–25 (Iowa 1981), but the intent question, specific as opposed to general, was not at issue. Rather, in *Gates* we held that the application of the evidentiary presumption created by section 714.1(2) comported with due process.

■ Revised criminal code offenses are to be construed as altering prior law only if a legislative intent to change the prior law is clear. *Emery v. Fenton*, 266 N.W.2d 6, 10 (Iowa 1978). The predecessor to section 714.1(2) was the repealed embezzlement statute, section 710.14(3), The Code 1977. *See* 4 J. Yeager & R. Carlson, *Criminal Law & Procedure* § 314 at 80 (1979). Section 710.14(3), The Code 1977, provided, in pertinent part:

Whoever, after consenting to the use of a motor vehicle . . . under a written agreement to redeliver the same to the person letting such vehicle or his agent, shall, with intent to defraud, abandon such vehicle or willfully refuse or willfully neglect to redeliver such vehicle as agreed, shall be guilty of a felony . . . .

■ In *State v. Billings*, 242 N.W.2d 736, 738 (Iowa 1976), we held that intent to defraud was an element of the crime of failure to return a rented motor vehicle under section 710.14(3). Eggman argues that because a specific intent to defraud was an element of section 710.14(3), The Code 1977, it continues to be an element of section 714.1(2), The Code 1979, despite the absence of the words "intent to defraud" from the face of the statute. We disagree.

The legislature omitted the express term "intent to defraud" from the statutory definition of theft by misappropriation in section 714.1(2). We conclude this is a clear expression of legislative intent to change the prior law. In *State v. Smith*, 300 N.W.2d 90, 92–93 (Iowa 1981), we held that intent to defraud was not an element of theft in violation of section 714.1(6), The Code 1979 (insufficient fund checks), despite the fact it had been an express element of the predecessor statute, section 713.3, The Code 1977. We noted that intent to defraud was an element of the prior statute that had been deleted from section 714.1(6). *Id.* at 92. Guilty knowledge, instead of a specific intent to defraud, was found to be the *mens rea* of that offense. *Id.* at 93. We find *Smith* to be controlling here by analogy and hold that a specific intent to defraud is not a necessary element of the offense of theft by misappropriation in violation of section 714.1(2).

This conclusion is further supported by a comparison of section 714.1(2) with other sections of the revised theft statute. *See Loras College*, 285 N.W.2d at 148; 2A C. Sands, *Statutes and Statutory Construction* § 47.02 at 71–72 (4th Ed. 1973). Section 714.1(5) maintains intent to defraud as an express element of the offense of taking property in which another has a security

interest. This indicates that the legislature was at least aware of the existence of the clause "intent to defraud" and its omission from section 714.1(2) was not caused by lack of knowledge. Of course, words may be added or inserted in a statute where it is necessary to effectuate the legislative intent or manifested statutory meaning. 2A C. Sands § 47.38 at 172; *See e. g., State v. Miller; State v. Christopher; State v. Ramos; State v. Drummer; State v. Schultz.* But this is a construction which is to be exercised with unusual caution and is not warranted unless the omission from the text is plain. 2A C. Sands § 47.38 at 172. This construction is not warranted in the present case.

As we stated in *Smith* there are some offenses that we conclude have been changed as between the prior and the present criminal code. Section 714.1(2) is one of these offenses. When the language of legislation is plain, courts should not by the process of construction inject their own views on the advisability of statutory provisions. *See Hawkins v. Preisser*, 264 N.W.2d 726, 729 (Iowa 1978); *City of Waterloo v. Selden*, 251 N.W.2d 506, 508 (Iowa 1977); *Lunday v. Vogelmann*, 213 N.W.2d 904, 907 (Iowa 1973). The wisdom of legislation, including section 714.1(2), is for the legislature to decide. *Id.* If the statute proves unwise, the legislature can change it.

Therefore, we hold that a general criminal intent, but not a specific intent to defraud, is an element of section 714.1(2), theft by misappropriation.

The clerk is directed to proceed in accordance with Iowa R.App.P. 458.

CERTIFIED QUESTIONS ANSWERED.