# IN THE COURT OF APPEALS OF IOWA

No. 21-0944
Filed October 5, 2022

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ABDIRIZAK MURSAL ARAB,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Woodbury County, Duane E. Hoffmeyer, Judge.


        Abdirizak Arab appeals his conviction and sentence for theft in the second degree. **AFFIRMED.**


        Martha J. Lucey, State Appellate Defender, and Nan Jennisch, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Martha A. Trout, Assistant Attorney General, for appellee.


        Considered by Ahlers, P.J., and Badding and Chicchelly, JJ.

**AHLERS, Presiding Judge.**

A jury found Abdirizak Arab guilty of second-degree theft as a habitual offender. He appeals, contending there was insufficient evidence supporting the jury's verdict.

## I. Factual and Procedural Background

Viewing the evidence in the light most favorable to the State, the following facts can be gleaned from the record. Arab entered a convenience store looking for some chicken, but he left when told the store was out of chicken. Arab lingered outside. A store clerk told him he could not loiter. Arab responded that he was waiting for a ride.

A short time later, an SUV pulled up in front of the store. Both the driver and the passenger exited the SUV and went inside. They left the SUV's engine running. Arab seized the opportunity and got into the SUV and sped away, nearly colliding with another vehicle. The driver gave chase on foot but was unable to catch the fleeing SUV.

The driver called law enforcement and walked home. The driver and his passenger then set out to look for the SUV. They found it parked on a residential street. When they approached the SUV, Arab came walking out of a nearby alley. Arab asked if they were looking for the SUV. When told that they were, Arab presented the keys and stated his friend told him to give the keys back to the driver. Arab also produced the driver's cell phone, cigarettes, lighter, and the front plate of the SUV's radio on the driver's demand. Arab tried to leave when the driver recognized him as the person who drove off in the SUV, but the driver held Arab down until police arrived.

Arab was charged with second-degree theft for possessing stolen property as a habitual offender. *See* Iowa Code §§ 714.1(4) (2021) (establishing possession of stolen property as one way of committing the crime of theft), .2(2) (establishing the requirements for second-degree theft), 902.8 (defining habitual offender). At trial, the store clerk and the driver identified Arab as the person who took the SUV, and surveillance camera video confirmed the identification.

After the jury returned a guilty verdict, Arab filed a motion in arrest of judgment renewing a sufficiency-of-the-evidence challenge he made during trial. The district court denied the motion, adjudicated Arab guilty, and sentenced him. Arab appeals. He contends there was insufficient evidence supporting the guilty verdict.

## II.    Standard of Review

We review sufficiency-of-the-evidence challenges for corrections of errors at law. *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). This means we are highly deferential to the jury's verdict, and the verdict binds us if it is supported by substantial evidence. *Id.* Evidence is substantial if it is sufficient to convince a rational fact finder that the defendant is guilty beyond a reasonable doubt. *Id.* In assessing whether there is substantial evidence, "we view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Id.* (quoting *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017)).

## III.    Sufficiency of the Evidence

Iowa Code section 714.1 defines the crime of theft, and the subsections of that section establish the alternative methods of committing the offense. *State v.*

*Schmitz*, 610 N.W.2d 514, 517 (Iowa 2000). Arab was charged with theft by possessing stolen property in violation of section 714.1(4), which prohibits a person from "[e]xercis[ing] control over stolen property, knowing such property to have been stolen, or having reasonable cause to believe that such property has been stolen, unless the person's purpose is to promptly restore it to the owner or to deliver it to an appropriate public officer." This method of committing theft differs from that found in section 714.1(1), which prohibits a person from "[t]ak[ing] possession or control of the property of another, or property in the possession of another, with the intent to deprive the other thereof." The intent to deprive referenced in section 714.1(1) means "intent to *permanently* deprive the owner" of the property. *See State v. Schminkey*, 597 N.W.2d 785, 789 (Iowa 1999). Comparing these two subsections, we see that section 714.1(1) requires proof of "intent to [permanently] deprive," while section 714.1(4) does not. *State v. Brown*, No. 16-0359, 2017 WL 4049311, at *1–2 (Iowa Ct. App. Sep. 13, 2017).

Arab acknowledges this difference between subsections (1) and (4). He also acknowledges that, since he was charged under subsection (4), the State is not required to prove that he had an intent to permanently deprive the owner of the vehicle. Nevertheless, he argues that the State had to prove the SUV was stolen, which inherently requires proof that *someone* had the intent to permanently deprive the SUV from its rightful possessor. This is where he claims the State failed.

However, this court already rejected this argument in *Brown*. *Id.* There we said:

> A person could exercise control over stolen property without intending to permanently deprive the person of that property. Unlike section 714.1(1), section 714.1(4) simply requires a showing that

> Brown knew the property was stolen when he exercised control over it and he did not intend to promptly restore it. Intent to permanently deprive the owner of the property is not an element of section 714.1(4).

*Id.* at *2. The same reasoning applies here. The evidence established that Arab took possession of the SUV; sped away—almost striking another vehicle in the process; took items from the SUV, going so far as to remove the face plate of the SUV's radio and taking it out of the SUV; was found in the area where the SUV was discovered; and then engaged in deception about who took the SUV when discovered. This evidence supports the finding that the vehicle was stolen, Arab knew it was stolen, and it was not his purpose to promptly return it to the owner or a public officer.[1]

For all these reasons, we find substantial evidence supports the jury's verdict. We affirm Arab's conviction.

**AFFIRMED.**

---

[1] We are mindful of the special concurrence in *Brown*, which expressed the opinion that a charge under section 714.1(4) must be supported by proof that someone stole the vehicle, thus requiring proof that someone had the intent to permanently deprive the owner of the property. 2017 WL 4049311, at *4 (Tabor, J., concurring specially). The concurring opinion expressed concern that, absent proof of someone's intent to permanently deprive the owner of the property, every joyriding incident could be converted to a theft charge rather than a charge of operating without owner's consent under section 714.7 simply by charging under section 714.1(4). *Id.* Despite this concern, the concurrence acknowledged there was substantial evidence that the vehicle was stolen based on the facts, so the concurring judge agreed to affirm the conviction. *Id.* Even under the more exacting burden suggested by the concurring opinion in *Brown*, the evidence we have highlighted here constitutes substantial evidence that there was intent to permanently deprive the owner of the SUV, so it was stolen.